**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| RICKY PERALEZ,<br><br>               Plaintiff,<br>     v.<br><br>THE WASHINGTON STATE DEPARTMENT OF CORRECTIONS; HAROLD CLARKE; DOUGLAS WADDINGTON; BELINDA STEWART; KEVIN SHANAHAN; JEAN STEWART; and JOHN DOES 1-20, employees and officials of the Washington Department of Corrections and/or Stafford Creek Corrections Center,<br><br>               Defendants. | **Case No.** C06-5625 JKA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

      This matter comes before the court on plaintiff's Motion for Class Certification (Doc.#16). This court has considered all materials submitted in support of and in response to said motion as well as the files and records herein. Additionally, the court heard oral argument by counsel the 9th day of August 2007.

      This civil rights action was commenced by plaintiff, Ricky Peralez, against the Washington State Department of Corrections (DOC) and state officials and employees. Plaintiff was sentenced to 20 months at DOC. Plaintiff seeks damages alleged to arise from defendants' intentional discrimination in violation of Title II of the Americans with Disabilities Act (ADA) (42 U.S.C. 12132), Section 5034 of the Rehabilitation Act of 1973 (29 U.S.C.794(a), and his equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1983. Plaintiff asserts that while in the custody of DOC, he was

ORDER
Page - 1

denied admission into the DOC work release program because he was physically disabled in violation of those laws established to protect his rights above set forth. It appears undisputed that plaintiff suffers from rheumatoid arthritis and is generally wheelchair bound. In his complaint plaintiff gave notice of his intent to maintain this action as a class action pursuant to FRCP 23.

Plaintiff, Ricky Peralez, now seeks class certification and permission to act as the designated class representative under FRCP 23(a) and 23(b). Plaintiff seeks damages on behalf of the class which he asks to be defined as:

> All disabled inmates of the Washington Department of Corrections who, since October 30, 2003 have been partially or wholly denied participation in the Department of Corrections' work release program because of a disability.

Defendants resists the motion, alleging as follows:

1. The plaintiff has failed to demonstrate that the class is so numerous that joinder of all members is impracticable per FRCP 23(a)(1);

2. The class representative does not meet the commonality requirement per FRCP 23(a)(2);

3. The class representative does not meet the typicality requirement per FRCP 23(a)(3); and

4. Questions of law or fact common to members of the class do not predominate over any questions affecting only individual members, and a class action is not superior to other methods for the fair and efficient adjudication of the controversy per FRCP 23(b)(3).

## DISCUSSION

It is undisputed that DOC may permit a prisoner to participate in a work release program pursuant to RCW 72.65 during the last 180 days of his/her sentence, WAC 137-56–040. DOC operates a work release program with 670 beds housed in 15 facilities throughout the state. The transitional program anticipates that participants will obtain counseling and employment within 10 days of entry. The participants reside at and remain in the custody of DOC but are allowed to work away from the work release site. It is contemplated that the participant will be employed for most of the 180 days remaining in his sentence, acquire some funds to be available upon release, and continue his employment after release.

It is further contemplated that the participant will be placed at a work release facility reasonably close to this anticipated post release residence in order to facilitate the benefit of the work release job placement.

At oral argument defense counsel agreed as follows: (1) DOC has the legal obligation to comply with the ADA; (2) DOC uses numeric codes (1 through 5) to assess physical functionality of inmates through a system referred to as PULHES or PULHESDXT to specifically classify each inmate with respect to various aspects of their bodies functional capacity, including physical capability, upper extremities, lower extremities, eyesight, hearing, and overall functional work capacity; (3) that every inmate who had an overall rating of 3 was automatically denied work release; and (4) the DOC work release program is one to which disabled inmates have a right. Defendants deny, however, that they have a policy to categorically deny work release to disabled inmates.

Plaintiff was initially sentenced to 20 months at DOC with an earned early release date approximating November 4, 2006. In March of 2006 plaintiff's counselor advised him that he was eligible to participate in the program. In May of 2006 plaintiff requested transfer to the work release facility at Lincoln Park. Plaintiff also alleges that he sought placement elsewhere in the work release program. Repeated requests through the chain of command all the way to the Secretary of DOC all resulted in the same response. The ultimate denial from the Secretary of DOC advised the plaintiff that Lincoln Park was the only facility he was eligible for admittance, and that he could not participate because of his inability to climb the stairs. When plaintiff requested permission to grieve it was returned with a box checked "not a grievable issue," and a handwritten notation which stated that "transfers cannot be grieved." Ultimately, following correspondence to DOC from legal counsel, plaintiff was admitted into the work release program approximately 25 days before his release date. DOC Policy Directive 300.500 precludes from work release eligibility those who "do not meet the medical criteria for placement as determined by facility health care staff." There is, however, no evidence that such a determination was made by health care staff, other than exclusion because it was determined plaintiff's disability precluded climbing stairs. Although defendants *now* allege that the purpose for the denial was an error, and should

have been on the basis that Lincoln Park was restricted to inmates with mental health and developmental disability issues, there is no evidence that the denial was based on any consideration other than plaintiff's disability.   Plaintiff offers an opinion by Dr. Stern that if he had reviewed the plaintiff's medical history he would have recommended against work release placement, however there is no evidence that such an opinion was rendered at the time of the denial.

**1. Numerosity**.  Defendants allege that plaintiff offers no evidence that numerous other inmates were denied work release privileges because of their disability.  The court has separately considered plaintiff's motion to compel and has directed defendants to produce 2000 legal face sheets in addition to 700 names and contact information of persons who have a  "no stairs" record notation.  Defendants have agreed to deliver this information to plaintiff no later than August 22, 2007.  Plaintiff offers a 2001 Department of Justice Study confirming that 12% of state prison inmates suffer from physical disabilities. Defendants acknowledge that 70,000 inmates have passed through the DOC in the past three and one-half years.  Because defendants choose not to classify inmates as "disabled" and because they have no data base from which "disabled" inmates may be drawn, they seem to suggest that plaintiff cannot meet its "numerosity" burden.  This court disagrees.  Defendants acknowledge that 7,656 offenders have been transferred from prison to work release facilities in the past three years.  The evidence submitted by plaintiff is more than speculative.  DOC houses inmates from the four corners of the State of Washington.  It is reasonable to assume that potential class members would reside throughout the state.  It is also reasonable to assume that, as a whole, they would not be sophisticated in the ways necessary to assert the claims plaintiff Peralez seeks.  Plaintiff has made it clear at oral argument that plaintiff is not seeking long term damages, but that the focus of the claim (as well as the potential class) is for loss of income during the 180 day work release program.  Should potential claimants wish to opt out of the class on the basis that the failure to receive counseling, training and employment during work release led to a longer and larger income loss they would of course be free to do so.

**2. Commonality of questions of law and fact.**  As plaintiff asserts, the commonality requirement is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members. *Armstrong v. Davis*, 275, F.3d 849, 868 (9th Cir. 2001).  Certainly in the case at bar common questions of fact exist with regard to the putative class including, but not limited to: (1) was the member disabled; (2) did the member seek work release; (3) could the disability have been accommodated; (4) was the member denied;  and (5) did defendants exclude disabled inmates from work release as a matter of policy.   Resolution of those factual issues could give rise to common questions of law, again including but not limited to: (1) did defendants engage in a policy that violated Title II of the ADA; (2) did defendants engage in a policy that violated the Rehabilitation Act, and (3) is the 1983 claim foreclosed by the ADA claim, or is it a separate cause of action.

The court has given a great deal of consideration to defendants' position that there are potential factual distinctions such as: (1) the nature of the disability; (2) suitability for potential employment; (3) work release compatibility with release plans; and (4) would work release pose a safety/health issue for the inmate.  This court is sensitive to the tension between protecting the inmates rights under the ADA and protecting their rights under the Eighth Amendment.  It is certainly within the realm of contemplation that a disabled person might not be suitable for work release if the environment would clearly jeopardize this health and safety or the health and safety of others, and that the issue could not be reasonably resolved by way of accommodation.  Not all inmates are considered for work release.  The criteria are set forth in DOC Policy Directive 300.500: (1) no felony detainers; (2) no Immigration and Customs Enforcement detainers; (3) in state release plan; (4) no recommendation for civil commitment; (5)  meet medical criteria for placement as determined by facility health care staff; (6) no First Degree Murder conviction – unless approved as part of a Mutual Agreement Program; (7) no high media profile; (8) no imminent threat to others that cannot be mitigated; (9) no First Degree Rape conviction within three years; and (10)  meet DOC recognized local agreement criteria.  These criterial are designed to protect both the public and the inmate. Clearly criteria (5) "Do not meet the medical criteria for placement as determined by facility

health care staff" may relate to Eighth Amendment issues.  Defense counsel asserts "chrono notes" (chronological entry of notes by staff in  inmates files  recording  inmate contacts) are kept in each inmates file.  Those notes would reveal in each inmates case whether or not the facility health care staff engaged in that kind of analysis and whether or not that was a consideration with regard to work release allowance or placement.  There is no such indication in the case of plaintiff Peralez.  Should the court grant class action status, a special Master could be appointed to review the "chrono notes" in each claimant's file to determine whether or not that analysis or review in fact occurred.  Plaintiff has substantiated the commonality requirement.

     **3. Typicality of the claim of plaintiff Peralez to those of the proposed class.**  Defendants assert that plaintiff cannot meet the typicality requirement by conclusory allegations.  Given the nature of the claim and the record to date, there is nothing to suggest that the claim of Peralez would be atypical to those of the proposed class, except to the extent the "chrono notes" discussed above would suggest that work release privileges were not denied on the basis of the inmates disability.  Plaintiff's legal theory is plain and simply that he was denied work release privileges because he was disabled.  Although the nature of the disability may differ, the typicality requirement is met if denial was based on disability and failure to accommodate.  As discussed above, the damage claims would be typical to the extent they would cover the lost income during the 180 day work release period.

     **4. Predomination of questions of law and fact over questions affecting individual class members./Adequacy of class protection**   For the reasons discussed above the court is satisfied that questions of law and fact (discussed above) regarding the class would predominate over whatever questions might be applicable to an individual class member.  Because the court has found sufficient evidence of "typicality" and because there has been no evidence submitted in contravention of plaintiff's counsels assertions regarding their fitness to prosecute the claim of plaintiff and the proposed class.

     **5. Suitability of Class Action**.   This court finds that the number of potential class members, the commonality of the issues, the likely value of the claims, and the difficulty in pursuing the claims

individually, suggest that the matter is suitable for class action certification. Certainly the need to avoid inconsistent or varying adjudications of individual claims would be supported by class action status.

## **ORDER**

Accordingly, the court hereby certifies as a class:

> **All disabled inmates of the Washington Department of Corrections who, since October 30, 2003, have been partially or wholly denied participation in the DOC work release program because of a disability, and whose claim is limited to no more than 180 days of lost wages.**

Dated this 10th day of August, 2007.

*/s/ J. Kelley Arnold*
J. Kelley Arnold, U.S. Magistrate Judge

ORDER
Page - 7